No. 45,549

Fred Wells, Administrator of the Estate of Cyrus Fry Wells, Deceased, *Appellant,* v. Wayne Ross and George Ross, *Appellees.*

(465 P. 2d 966)

Opinion filed March 7, 1970.

*H. Hobble, Jr.,* of Liberal, argued the cause, and *Chas. E. Vance, Rex A. Neubauer, Chester A. Nordling, Gene H. Sharp, Kerry McQueen* and *Michael P. Dreiling,* all of Liberal, were with him on the brief for the appellant.

*Jim Mangan,* of Dodge City, argued the cause, and *Jack Dalton,* of Dodge City, was with him on the brief for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from an order dismissing an action to set aside an agricultural lease or in lieu thereof to reform the lease to do equity between the parties.

The motion to dismiss challenged the right to maintain the action on two grounds—(1) *res judicata* and (2) estoppel by acceptance of rental payments.

As the doctrine of *res judicata* disposes of the controversy we will devote our attention to the facts material to this issue.

On April 28, 1965, the heirs at law of C. F. Wells, deceased, filed a petition in the District Court of Meade County, Kansas,

against the present appellees for relief from a farm lease. The pertinent part of the petition reads as follows:

"That said lease was executed at a time when the lessors were unable, due to age and infirmity, to transact business and at the time of the execution of this agreement had no opportunity to consult with other members of their family who had been advising lessors and assisting them with all their business transactions for several years. That the rental provided in said farm lease agreement is grossly inadequate and because of the circumstances surrounding its execution, the same should be by the court reformed so as to do equity between the parties."

The petition prayed for judgment reforming the lease to do equity between the parties. This case will be referred to as the first case.

The lease was dated January 23, 1963, and C. F. Wells and Sarah Wells, his wife, were lessors. C. F. Wells died September 11, 1964.

On April 30, 1965, defendants filed a motion against this petition which was heard by the court on May 4, 1965. On May 28, 1965, the court ruled that the petition did not state a cause of action for reformation and dissmissed the action. Plaintiffs filed their notice of appeal and statement of points.

On June 10, 1965, the same plaintiffs filed a new action in the Meade County District Court which will be referred to as the second case and is the case appealed in this matter. The petition contained the same allegations as the petition in the first case except plaintiffs added the following allegation:

"At the time of the execution of said lease and at all times subsequent thereto, the said lessors were mentally incompetent."

and changed Paragraph 4 by adding that the lease was obtained surreptitiously and that it should be set aside. The prayer asked that the lease be set aside or if the court found that by reason of moneys expended by the defendants it would be inequitable to set aside the lease, that the court reform the lease to do equity.

On June 25, 1965, defendants filed a motion against this petition raising among other questions the court's lack of jurisdiction over the subject matter and the defendants.

On September 30, 1965, Fred Wells, who was one of the original plaintiffs, was appointed administrator of the estate of his father, C. F. Wells. On October 4, 1965, without application to or leave of the court an amended petition was filed in case number 6058 naming only the administrator as plaintiff. The allegations were the same as the petition filed June 10, 1965, except that Paragraph 1 was changed to read as follows:

"That the plaintiff is the duly authorized, qualified and appointed administrator of the estate of Cyrus Fry Wells, deceased."

On December 22, 1965, the appeal in the first action was dismissed by the Supreme Court for failure of the appellants to file a brief.

The trial court later dismissed the second action on defendants' motion. The plaintiff has appealed.

The doctrine of *res judicata* is a rule of public policy. It is to the interest of the state that there be an end to litigation and an end to the hardship on an individual being vexed more than once for the same cause. The doctrine is, therefore, to be given a liberal application but not applied so rigidly as to defeat the ends of justice.

The doctrine means that, if an action is brought, the merits of the question are discussed and a final judgment is obtained by either party, the parties are concluded and cannot again canvass the same question in another action. In *Kenoyer v. Board of Barber Examiners*, 176 Kan. 424, 271 P. 2d 267, we stated:

"This state has long followed the rule that to make a matter *res judicata* there must be a concurrence of four conditions, namely, (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action, and (4) identity of the quality in the persons for or against whom the claim is made. (*A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.*, 12 Kan. 127; *Hofstetter v. Myers Construction, Inc.*, 170 Kan. 464, 227 P. 2d 115.)" (p. 427.)

Appellant calls our attention to the above statement and without challenging the validity and finality of the first judgment contends that it was not *res judicata* because (1) lack of identity of causes of action and (2) lack of identity of parties.

We cannot agree with appellant's contentions.

It must be conceded that the two actions involve the same subject matter—an agricultural lease. We are given tests of identity of cause of action in 46 Am. Jur. 2d, Judgments, § 406, p. 574, which reads:

"The term 'cause of action' is not easily defined, and the authorities have laid down no thoroughly satisfactory and all-embracing definition; it may mean one thing for one purpose and something different for another. A fundamental test applied for comparing causes of action, for the purpose of applying principles of res judicata, is whether the primary right and duty, and delict or wrong, are the same in each action. Under this test, there is but one cause of action where there is but one right in the plaintiff and one wrong on the part of the defendant involving that right. In general, it may be said that under the doctrine of res judicata, a judgment bars relitigation of the same contro-

versy. Two actions have also been regarded as being based on the same cause of action where the issues in the first action were broad enough to comprehend all that was involved in the issues of the second action, or where the two actions have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the judgment in the first."

There was but one relief desired in both actions—relief from an agricultural lease.

The appellant suggests that the facts pleaded in the second action are different. We do not find a material difference. In the first action it was alleged "that said lease was executed at a time when the lessors were unable, due to age and infirmity to transact business." In the second case there was added to the language above the phrase "and said lease was obtained surreptitiously." There was also inserted in the petition in the second action the allegation:

"At the time of the execution of said lease and at all times subsequent thereto, the said lessors were mentally incompetent."

We cannot see where in the second action the allegations changed the nature of the cause. As suggested by appellees, they differ only in choice of descriptive words relative to mental incompetency, inadequacy of consideration and obtaining the lease secretively.

If the appellant sought to change its cause of action to one of actual fraud, his efforts were unavailing. Fraud is a special matter that must be specifically pleaded. K. S. A. 60-209 (b) provides:

"*Fraud, mistake, condition of the mind.* In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

We turn next to appellant's suggestion that the identity of the parties is not the same.

The first action was prosecuted by the heirs of C. F. Wells against the two lessees. The second action was brought by the heirs of C. F. Wells and sometime thereafter one of the heirs, Fred Wells, was appointed administrator of the estate of C. F. Wells and an attempt was made to substitute the administrator in the second case for the heirs of C. F. Wells by the filing of an amended petition.

Appellees challenge the validity of the substitution because the amended petition was filed without application to or leave of the court. We do not think the question is material here. Neither do we think a lengthy discussion of parties in privity is necessary.

The case of *Rost v. Heyka,* 133 Kan. 292, 299 Pac. 969, gives us the answer to the question. We stated:

". . . The remainder of the estate belongs to the heirs and, as we have seen, all the heirs were parties in the former action when the questions involved were litigated. In his capacity as administrator he was a representative of the heirs to whom the estate was to be partitioned and was in fact in privity with them and the judgment against him in his capacity as heir is conclusive against him in his capacity as administrator. (*Donifelser v. Heyl,* 7 Kan. App. 606, affirmed in 59 Kan. 779.) In *Harris v. Morrison,* 100 Kan. 157, syl. ¶ 2, 163 Pac. 1062, it was held that—

"'In an action to determine the ownership of the residue of property left after paying the debts of the deceased person, which action is prosecuted by one to whom the deceased person had contracted to leave the property at his death, against the beneficiary under the will executed by the deceased person, a judgment against the beneficiary is final and conclusive and will be binding on the executor in the final distribution of the estate.' (See, also, cases cited on the point.)

"The general rule is that a judgment binds not only the parties to the action but also those who are in privity with them in the estate, and in the situation mentioned the administrator was so far in privity with the heirs as to be concluded by the determination in the first action. Cases somewhat in point are: *Ervin v. Morris,* 26 Kan. 664; *Hoisington, Sheriff v. Brakey,* 31 Kan. 560, 3 Pac. 353; *Ellis v. Crowl,* 46 Kan. 100, 26 Pac. 454; *McEntire v. Williamson,* 63 Kan. 275, 65 Pac. 244; *Hayes v. Insurance Co.,* 104 Kan. 230, 178 Pac. 432; *Lodge v. Order of United Commercial Travelers,* 125 Kan. 26, 262 Pac. 598; *Hardy v. Miller,* 131 Kan. 65, 289 Pac. 952.

"It is unnecessary to cite cases in support of the rule that a fact brought in issue and judicially determined by a court of competent jurisdiction is conclusively settled by the judgment therein as to the parties to the action and those in privity with them and cannot be relitigated in a later action. The judgment rendered against Frank W. Rost in the former action must be held to be conclusive against him not only as heir but also in his capacity as administrator." (p. 295.)

We are forced to conclude that the doctrine of *res judicata* was applicable and the judgment in the first action was a bar to the second.

The judgment is affirmed.

APPROVED BY THE COURT.